UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VIKTOR MOSKALENKO,

                Petitioner,

    v.

PAMELA BONDI, *et al.*,

                Respondents.

Case No. C26-0998-SKV

ORDER GRANTING IN PART
PETITION FOR WRIT OF HABEAS
CORPUS

## I.   INTRODUCTION

Petitioner has been detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington since October 27, 2025.  Dkt. 1 at 7; Dkt. 6 at 6; Dkt. 7 at 8.  Petitioner brings this 28 U.S.C. § 2241 habeas action through counsel, asserting his detention is unlawfully indefinite and that it is significantly unlikely that he will be removed in the reasonably foreseeable future.  Dkt. 1 at 4.  Petitioner seeks release from custody and injunctive relief related to future re-detention and third country removal.  *Id.* at 26-27.  Government Respondents filed a timely Return.  Dkt. 6.  Petitioner filed a timely Traverse.  Dkt. 9.  The matter is now ripe for review.  Having considered the parties'

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 1

submissions, the balance of the record, and the governing law, the Court ORDERS Petitioner be released within twenty-four (24) hours.  Additional relief requested is addressed below.

## II.    BACKGROUND

The factual record is largely undisputed.  Petitioner was born in the then-U.S.S.R. and immigrated to the United States in 1992 with his family. Dkt. 1, Ex. A; Dkt. 6 at 4; Dkt. 7, ¶ 3. Since coming to the United States, the territory in which Petitioner was born became the country of Estonia.  Dkt. 1 at 1; Dkt. 7, ¶ 3.  Petitioner is not, however, a citizen of Estonia.  Dkt. 1, Ex. A.

On March 24[1], 1999, Petitioner was mailed a Notice to Appear before an immigration judge, having been charged under the Immigration and Nationality Act ("INA") Section 237(a)(2)(A)(iii) (controlled substance violations), subjecting him to removal from the United States.  Dkt. 7, ¶ 5; Dkt. 8, Ex. A.  On July 14, 1999, a final removal order to Estonia was issued by an immigration judge.  Dkt. 1 at 2, 6; Dkt. 7, ¶ 6; Dkt. 8, Ex. B (removal order).  Petitioner was detained following the final order of removal, but the Government could not obtain travel documents to Estonia.  Dkt. 6 at 1; Dkt. 7, ¶ 6.

Petitioner was released on an Order of Supervision ("OSUP") on November 17[2], 1999, which required him to abide by certain conditions of release, including a requirement that Petitioner abide by local, state, and federal law.  Dkt. 7, ¶ 6; Dkt. 8, Ex. C.  Respondents assert Petitioner did not comply with those conditions and "amassed multiple criminal convictions over the decades. . . ."  Dkt. 6 at 1.  Respondents state that "ICE has served Petitioner with new

---

[1] The Declaration of Robert Andron, filed in support of Respondents' Return memorandum states the Notice to Appear was issued on March 29, 1999.  *See* Dkt. 7, ¶ 5.

[2] The Declaration of Robert Andron states the Order of Supervision (OSUP) was issued on November 9, 1999.  *See id.*, ¶ 6.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 2

OSUPs multiple times since 1999." Dkt. 6 at 5; *see also* Dkt. 8, Exs. E-H, L.  The last operative OSUP appears to have been issued in 2017.  Dkt. 6 at 6, n.3; Dkt. 8, Ex. L (documenting Petitioner's release on an OSUP and dated December 13, 2017).  Petitioner acknowledges he was re-detained a number of times during the years following the final removal order, the dates of which are unknown by Petitioner and unclear from the record.[3]  Dkt. 1 at 7.

Petitioner has been detained since October 27, 2025, when ICE took custody of him after he finished serving a prison sentence for an unrelated criminal conviction.  *Id.*; Dkt. 7, ¶ 8; Dkt. 8, Ex. I (Warrant for Arrest of Alien).  Respondents contend Petitioner's OSUP was revoked based on his "recent arrests and convictions, among other enumerated violations" and he was transferred into immigration custody at the NWIPC.  Dkt. 6 at 2; Dkt. 7, ¶ 8.

While in custody, Petitioner contacted the Embassy of Estonia in December 2025 to request travel documents, which denied his request.  Dkt. 1, Ex. B.  Respondents assert ICE is "requesting a travel document from Russia, but no travel document approval has been received yet."  Dkt. 6 at 6; Dkt. 7, ¶ 9.  Because ICE has not been able to obtain a travel document, there is no removal scheduled.  Dkt. 6 at 6.

On March 24, 2026, Petitioner filed this habeas petition, challenging his current detention and seeking injunctive relief.  *See generally* Dkt. 1.  Specifically, Petitioner seeks:

(1) release from detention (and confirmation of release);

(2) an injunction prohibiting the Government from re-detaining Petitioner without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of establishing flight risk or danger to the community based on changed circumstances since Petitioner was previously released;

(3) an injunction prohibiting the Government from re-detaining Petitioner unless the Government first obtains and provides valid Estonian or Russian travel documents to him and his counsel, and offers an opportunity for him to leave on his own within two

---

[3] There is evidence that United States Citizenship and Immigration Services was unable to provide a complete alien file ("A-file") to Respondents.  *See* Dkt. 6 at 6 n.3.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 3

months;

(4) an injunction prohibiting the Government from removing Petitioner to a third country without notice and a meaningful opportunity to respond in compliance with applicable statutes and due process in reopened removal proceedings; and

(5) an injunction prohibiting Respondents from removing Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival.

*Id.* at 26-27.

### III.   DISCUSSION

Federal courts have authority to grant writs of habeas corpus to individuals detained in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Yildirim v. Hermosillo*, No. C25-2696-KKE, 2026 WL 111358, at *1 (W.D. Wash. Jan. 15, 2026). "In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief," *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013), and may dispose of habeas matters "as law and justice require," *Id.*; 28 U.S.C. § 2243. This includes injunctive relief in individual cases. 8 U.S.C. 1252(f)(1); *see also Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481-82 (1999).

### A.   Petitioner's Detention is Presumptively Unreasonable Under *Zadvydas*[4]

The INA expressly permits detention of noncitizens who were admitted to the United States but subsequently ordered removed during immigration proceedings. *See* 8 U.S.C. §§ 1225(b), 1226(a), 1226(c), 1231(a). Here, the parties agree Petitioner's detention is authorized under § 1231(a) but dispute the lawfulness of continued detention under *Zadvydas*. *See generally* Dkts. 1, 6.

Section 1231(a) governs the detention and release of noncitizens such as Petitioner who have been ordered removed, and it provides that the Department of Homeland Security ("DHS")

---

[4] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 4

is required to detain a noncitizen during the 90-day "removal period."  8 U.S.C. § 1231(a)(2).

After the "mandatory" 90-day removal period expires, DHS has the discretionary authority to

continue to detain certain noncitizens or to release them on supervision.  *See* 8 U.S.C. §

1231(a)(6).  Although § 1231(a)(6) authorizes ICE to detain noncitizens beyond the initial 90-

day window, it cannot do so indefinitely.  *See Zadvydas*, 533 U.S. at 682, 697.

In *Zadvydas*, the Supreme Court held that § 1231(a)(6) implicitly limits a noncitizen's

detention to a period reasonably necessary to bring about that individual's removal from the

United States.  *See id.* at 701.  The Supreme Court determined that it is "presumptively

reasonable" for DHS to detain a noncitizen for six months following entry of a final removal

order while it works to remove the individual from the United States.  *Id*.  "After this 6-month

period, once the [noncitizen] provides good reason to believe that there is no significant

likelihood of removal in the reasonably foreseeable future, the Government must respond with

evidence sufficient to rebut that showing."  *Id*.  If the Government is unable to meet its burden,

then the noncitizen must be released from detention.  *See Jennings v. Rodriguez*, 583 U.S. 281,

299 (2018).

The Court agrees that the record reflects Petitioner's detention falls under § 1231(a)

given the final order of removal, and that assessing Petitioner's length of detention under the

guidance of *Zadvydas* is appropriate.

i.        Petitioner's total time detained is presumptively unreasonable.

Petitioner asserts that, given that his removal order became final on July 14, 1999, the

removal period under 8 U.S.C. § 1231 has long since expired, detention is no longer mandatory,

and he has been detained for more than six months since the final order was issued.  Dkt. 1 at 22.

Respondents appropriately concede that "the presumptively reasonable 6-month period has likely

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 5

expired here." Dkt. 6 at 8. While some dates of detention are difficult to ascertain from the record, Petitioner's contention (and Respondents' concession) that Petitioner's total time spent in detention has exceeded six months are supported by the record.

A petitioner's length of confinement need not be consecutive to reach the six-month threshold established in *Zadvydas*. *See Nguyen v. Scott*, 796 F. Supp. 3d 703, 721-22 (W.D. Wash. 2025) (finding the six-month period does not reset upon each release and collecting cases rejecting arguments to the contrary); *Yuksek v. Bondi*, No. C25-2555-DGE-GJL, 2026 WL 60364, at *2 (W.D. Wash. Jan. 8, 2026) (collecting cases).

Petitioner spent approximately four months in detention immediately after his final order of removal to Estonia was issued and his current detention is approaching six months. Petitioner asserts he was also detained in 2010 (for approximately two months) and 2017 (for approximately twenty days). Dkt. 1 at 2. Respondents do not dispute the length of Petitioner's detentions throughout the years and acknowledge that the presumptively reasonable 6-month period has likely passed. Dkt. 6 at 8. Accordingly, the Court finds Petitioner's total time spent in detention, purportedly authorized under § 1231(a), has well exceeded six months and is presumptively unreasonable under *Zadvydas*.

        ii.      <u>Petitioner meets his burden to show it is significantly unlikely that he will be removed in the foreseeable future.</u>

Petitioner also contends that "[t]here is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Dkt. 1 at 22. *Zadvydas* "places the burden on the [noncitizen] to show, after a detention period of six months, that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Pelich v. I.N.S.*, 329 F.3d 1057, 1059 (9th Cir. 2003) (quoting *Zadvydas*, 533 U.S. at 701). Respondents do not meaningfully address Petitioner's claim that removal is not

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 6

significantly likely or otherwise argue Petitioner does not meet that burden here.  *See generally* Dkt. 6.

Petitioner certainly meets his burden to show he will not be removed to Estonia in the reasonably foreseeable future.  Respondents were unable to secure travel documents back in 1999 following entry of the removal order to Estonia.  Further, it appears the Government has abandoned efforts to pursue removal to Estonia following the Embassy's December 2025 letter confirming Petitioner's lack of Estonian citizenship and denying travel documents.  Dkt. 7, ¶ 9.

Petitioner also shows there is no significant likelihood of removal in the foreseeable future to Russia.  ICE requested travel documents from Russia (unsuccessfully) in 1999.  *See* Dkt. 8, Ex. 4 (indicating travel documents were requested from the "Consulate general [*sic*] of the Russian Federation").  The Russian Federation responded that [Petitioner] is not a Russian citizen and that [travel documents] will not be issued."  *Id.*  Respondents have apparently renewed their travel document request, but they do not indicate what, if anything, has changed since 1999 that makes removal to Russia significantly likely now.  Dkt. 6 at 8; Dkt. 7, ¶ 9.

The record makes clear that Petitioner will not be accepted by Estonia and Respondents' request for Russian travel documents remains unfulfilled.  The record does not reflect that Petitioner has citizenship or significant ties to any other country or that any other country is willing to accept him.  Therefore, the Court finds that Petitioner has shown "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

iii.    <u>Respondents do not rebut Petitioner's showing.</u>

Once a petitioner meets their burden to show a presumptively unreasonable length of detention and a significant unlikelihood of removal in the reasonably foreseeable future, the

burden shifts to Respondents to rebut that showing. *See Zadvydas*, 522 U.S. at 701. They have not done so.

At most, Respondents offer that they are "seek[ing] a travel document for [Petitioner's] removal to Russia" but that "[n]o travel document approval has been received at this time." Dkt. 6 at 8; Dkt. 7, ¶ 9. This is particularly insufficient in light of the record, which reflects Russia has already previously declined to provide travel documents to Petitioner. The Court finds Respondents have failed to rebut Petitioner's showing that there is no significant likelihood of his removal in the reasonably foreseeable future.

The Court therefore concludes that Petitioner is entitled to habeas relief under *Zadvydas* and should be released from custody.

**B.     Remaining Claims and Requests for Relief**

Respondents appear to interpret Petitioner's suit as also challenging Petitioner's re-detention (or the revocation of his conditional release) on procedural due process grounds. *See* Dkt. 6 at 8-10. However, Petitioner's Traverse in reply clarifies that it does not. *See* Dkt. 9 at 5 ("[Petitioner] is not raising a due process challenge to the procedural sufficiency of his current re-detention."). Therefore, the Court turns to Petitioner's requests for injunctive relief, which seek to:

(1) prohibit the Government from re-detaining Petitioner without first holding a hearing before a neutral decisionmaker at which the Government bears the burden of establishing flight risk or danger to the community based on changed circumstances since Petitioner was previously released;

(2) prohibit the Government from re-detaining Petitioner unless the Government obtains and provides valid Estonian or Russian travel documents to him and his counsel, and offers an opportunity for him to leave on his own within two months but he does not leave;

(3) prohibit the Government from removing Petitioner to a third country without notice and a meaningful opportunity to respond in compliance with the statute and due

process in reopened removal proceedings; and

(4) prohibit the Government from removing Petitioner to any third country where he is likely to face imprisonment or other punishment upon arrival.

Dkt. 1 at 26-27.

A plaintiff or petitioner "seeking a permanent injunction must demonstrate (1) that he has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S 388, 391 (2006).

For the following reasons, the Court GRANTS (3) and DENIES (1), (2), and (4).

      i.    <u>The Court denies Petitioner's request to enjoin the Government from re-detaining him without a pre-deprivation hearing.</u>

Because Petitioner does not challenge his re-detention as procedurally improper, the Court declines to assess the legality of ICE's revocation of his OSUP or the processes by which his recent arrest was effectuated. That said, the Court observes that there is conflicting information regarding the reason Respondents revoked Petitioner's conditional release. Respondents suggest Petitioner's release was revoked because of his criminal history. Dkt. 7, ¶ 8. However, Respondents also assert that Petitioner's revocation was "because his removal could be effected." *See* Dkt. 6 at 9, n.5. Petitioner asserts that "Respondents' changing story about the reason for [his] current re-detention shows the arbitrariness with which Respondents approach re-detention, and thus the likelihood that Respondents will attempt to arbitrarily re-detain [him] without due process." Dkt. 9 at 7. Petitioner concludes that his petition

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 9

demonstrates that "his due process rights will be violated if he is re-detained without a pre-deprivation hearing."  Dkt. 9 at 6.

This conclusory argument is hard to reconcile with the fact that Petitioner *does not* allege his current re-detention violates due process.  *See* Dkt. 9 at 5 ("[Petitioner] is not raising a due process challenge to the procedural sufficiency of his current re-detention.").  Petitioner suggests other courts in this district "have determined that noncitizens will suffer this irreparable injury to their due process rights" and granted similar injunctive relief "even if the noncitizen does not bring a due process challenge to their current detention."  *Id*. at 6 (*citing Chicas v. Bondi*, No. C26-0451-RSM, 2026 WL 775635, at *4 (W.D. Wash. Mar. 19, 2026)).

In *Chicas*, the only finding of irreparable harm was in the context of third country removal and potential imprisonment upon arrival.  2026 WL 775635, at *4.  Further, the relief ordered by the court included a carve-out that the Petitioner could be re-detained if he violated conditions of release.  *Id.*  Petitioner's request here contains no such exception and is premised on an unsupported conclusion that unlawful re-detention is likely, notwithstanding Petitioner's tacit concession that his most recent re-detention comported with due process.  Under these facts, Petitioner has not established past or impending irreparable injury, and his request to enjoin the Government from re-detaining him without first providing a pre-deprivation hearing is properly denied.

      ii.     The Court denies Petitioner's request to enjoin Respondents from re-detaining him unless the Government obtains and provides certain travel documents.

Petitioner also seeks to enjoin the Government from re-detaining him unless the Government obtains valid travel documents to Estonia or Russia, provides them to Petitioner and his counsel, and offers Petitioner an opportunity to leave on his own within two months.  Dkt. 1

at 27.  Petitioner further requests that the Government be permitted to re-detain him only if he does not leave, and only if the Government "has already made concrete arrangements for him to be put on a flight to Estonia or Russia in the reasonably foreseeable future." *Id.*  Respondents argue that "[n]othing in *Zadvydas* imposes such prerequisites" and the "requested injunction would effectively impose new procedural requirements not found in the governing statutes or precedent."  Dkt. 6 at 14.

A noncitizen who is subject to a final order of removal but has been released from custody may be re-detained for failure to comply with the conditions set forth in the order of supervision or if, pursuant to a change in circumstances, ICE "determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(1)-(2).  Upon the noncitizen's return to custody, they must be given notice of the reasons their release was revoked and an opportunity to respond and submit evidence.  *See* 8 C.F.R. § 241.13(i)(3).  When a noncitizen is re-detained because of a change in circumstances, 8 C.F.R § 241.13(f) sets forth the factors the government must consider when determining whether there is a significant likelihood that the noncitizen will be removed in the reasonably foreseeable future.

A permanent injunction requires a "cognizable danger of recurrent violation," not just a past violation.  *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003); *see Torres v. Hermosillo*, No. C25-02687-LK, 2026 WL 145715, at *8 (W.D. Wash. Jan. 20, 2026).  Again, Petitioner does not even allege a past violation.  Further, nothing appears to prevent the Government from considering other third countries for removal, which this request would foreclose.

The Court therefore declines to order such specific relief.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 11

           iii.      <u>Petitioner is entitled to notice and a meaningful opportunity to be heard before any attempted third country removal other than Estonia or Russia.</u>

Petitioner also challenges his potential third country removal under the Fifth Amendment, the INA, the Convention Against Torture ("CAT"), and federal implementing regulations. Dkt. 1 at 24. Petitioner asserts Respondents' "policy for third country removals violates [those authorities] because it directs ICE agents to remove individuals to third countries with insufficient notice, process, and opportunity to respond. *Id.*

As an initial matter, Respondents argue that the Court should "decline to exercise jurisdiction over Petitioner's third country removal claim as a matter of comity," pointing to the case *D.V.D. v U.S. Dep't of Homeland Sec.*, No. C25-10676-BEM, 2025 WL 942948 (D. Mass. Mar. 28, 2025). Dkt. 6 at 11. Respondents further suggest that Petitioner's claims and requested relief makes him "a member of the Plaintiff Class certified in *D.V.D.*," binding him to the proceedings in that case. *Id.* However, Respondents do not meaningfully address the facts of *D.V.D.*, argue the legal significance of any holding therein, or explain how that case may or may not bear any relation to individual requests for injunctive relief in the context of third country removal. *Id.* Moreover, Respondents do not suggest why Petitioner here may fall within the certified class in *D.V.D.*

In *D.V.D.*, the plaintiff class obtained a preliminary injunction barring ICE from removing members of the class to third countries unless established procedures were followed. *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355, 394 (D. Mass. 2025). The United States Supreme Court stayed the district court's preliminary injunction pending appeal in the First Circuit. *Dep't of Homeland Sec., v. D.V.D.*, 145 S. Ct. 2153 (2025).

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 12

Although not expressly argued, to the extent Respondents suggest Petitioner is not entitled to individual injunctive relief because similar relief has been requested and stayed in *D.V.D.*, courts in this district have consistently rejected that argument.  *See Nguyen*, 796 F. Supp. 3d at 729-32 (W.D. Wash. Aug. 21, 2025); *Baltodano v. Bondi*, No. C25-1958-RSL, 2025 WL 3484769, at *2-3 (W.D. Wash. Dec. 4, 2025); *Abubaka v. Bondi*, No. C25-1889-RSL, 2025 WL 3204369, at *2 (W. D. Wash. Nov. 17, 2025).  This Court, as did the court in both *Baltodano* and *Abubaka*, adopts the *Nguyen* court's analysis of this issue and its findings that (1) "The class certification order in *D.V.D.* does not prevent this Court from adjudicating Petitioner's claims regarding third-country removal," and (2) absent "clear guidance from the Supreme Court," which the emergency docket order in *D.V.D.* does not provide, this Court declines to depart from the approach followed by courts in this District.  *Nguyen*, 796 F. Supp. 3d at 729-32.

Turning to the merits of Petitioner's request, he seeks "an order protecting his constitutional and statutory rights to notice and a meaningful opportunity to be heard when the Government seeks to remove him to a third country."  Dkt. 1 at 24.  Respondents do not meaningfully respond but rather reiterate their request that Petitioner be required to pursue such relief as a class member in the *D.V.D.* litigation.  Dkt. 6 at 14.  The Court finds that *D.V.D.* does not preclude the relief sought here.

Courts in this district have recently addressed challenges to ICE's current third country removal policy and have concluded that the policy violates due process.  *See Baltodano,* 2025 WL 3484769, at *6 (W.D. Wash. Dec. 4, 2025); *Abubaka,* 2025 WL 3204369, at *6 (W.D. Wash. Nov. 17, 2025); *see also Nguyen*, 796 F. Supp. 3d at 727–29.  In reaching these conclusions, the courts have relied on an earlier decision from this district, *Aden v. Nielsen*, 409 F. Supp. 3d 998 (W.D. Wash. 2019).

In *Aden*, the court held that a "noncitizen must be given sufficient notice of a country of deportation that, given his capacities and circumstances, he would have a reasonable opportunity to raise and pursue his claim for withholding of deportation." *Id.* at 1009. Citing to both the due process requirement that a petitioner be afforded "a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim," and to the statutory requirements of 8 U.S.C. § 1231, the *Aden* court held that in the context of a third country removal, "[g]iving petitioner an opportunity to file a motion to reopen [his removal proceedings] . . . is not an adequate substitute for the process that is due in these circumstances." *Id.* at 1010 (citations omitted). Rather, the court concluded, the removal proceedings must be reopened so that a hearing may be held. *Id.* at 1011. In *Nguyen*, the court noted that "[t]he requirements set forth in *Aden* flow directly from binding Ninth Circuit precedent about due process protections before removal to a third country[,]" and held that ICE's current policy governing third country removals "contravenes Ninth Circuit law." *Nguyen*, 796 F. Supp. 3d at 727–28.

The Court finds no basis to deviate from the reasoning in *Baltodano*, *Abukaka*, and *Nguyen*, and applies the same reasoning here. Petitioner acknowledges that he was born in what is now Estonia and has previously consented[5] to removal to Russia. Dkt. 1 at 6, 7. The Court therefore concludes that Petitioner is entitled to the requested order that Respondents not remove him to a third country, other than Estonia or Russia, without notice and a meaningful opportunity to be heard in reopened removal proceedings.

        iv.    <u>The Court denies Petitioner's request for an injunction prohibiting his removal to any third country.</u>

Finally, Petitioner contends that third country removal constitutes punitive banishment in violation of the Fifth and Eighth Amendments. Dkt. 1 at 24. Petitioner argues that the

---

[5] The record is not clear as to when Petitioner consented to removal to Russia.

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 14

Government has "selected countries notorious for human rights abuses and instability for third-country removal arrangements" and specifically targets individuals with criminal convictions. *Id.* at 25. This practice, contends Petitioner, is intended to "strike fear in the immigrant community" and "shocks the conscience" under the Fifth Amendment. *Id.* at 25-26. Respondents argue Petitioner has already consented to removal to Russia and the "governing statutory and regulatory framework provides a specific process for addressing such concerns." Dkt. 6 at 15. Respondents further argue that Petitioner has failed to offer evidence he will be removed to a country where he will face imprisonment or punishment and that such an order would "require DHS to preemptively assess and prohibit removal based on speculative or unasserted risks, outside the established procedures." *Id.*

Petitioner replies that Respondents misunderstand the concern, which is that removals under the current administration "occur rapidly and without advance notice," effectively removing any "realistic opportunity to seek relief before removal is effectuated." Dkt. 9 at 10-11.

Petitioner has not provided facts specific to his potential removal to a third country that demonstrate a likelihood of irreparable injury entitling him to a permanent injunction. Accordingly, the Court declines to make the broad ruling sought by Petitioner. The relief granted in this Order requiring notice and a meaningful opportunity to be heard in reopened removal proceedings will allow Petitioner to challenge any proposed third country removal where he can show risk of imprisonment or other serious harm. Nothing in this Order prevents him from pursuing additional relief if warranted by future events.

//

//

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 15

## IV.   CONCLUSION

Based on the foregoing, this Court ORDERS as follows:

(1) Petitioner's petition for writ of habeas corpus (Dkt. 1) is GRANTED.

(2) Respondents shall RELEASE Petitioner within twenty-four (24) hours on reasonable conditions of supervision.  Respondents shall file with the Court a notice confirming Petitioner has been released from immigration detention within forty-eight (48) hours.

(3) Respondents are ENJOINED from removing or seeking to remove Petitioner to a third country other than Estonia or Russia without providing him notice and a meaningful opportunity to respond in a reopened removal proceeding before an immigration judge.

(4) Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

The Court DENIES Petitioner's remaining requests for injunctive relief.

Dated this 27th day of April, 2026.

_S. Kate Vaughan_
S. KATE VAUGHAN
United States Magistrate Judge

ORDER GRANTING IN PART PETITION FOR
WRIT OF HABEAS CORPUS - 16